# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHERMAINE R. FLETCHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV166 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Chermaine R. Fletcher, brought this action under the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) The Court has before it the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), as well as the parties' cross-motions for judgment (Docket Entries 9, 11; see also Docket Entry 10 (Plaintiff's Brief); Docket Entry 12 (Defendant's Memorandum); Docket Entry 13 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB. (Tr. 150-57.) Upon denial of that application initially (Tr. 60-73) and on reconsideration (Tr. 74-89), she requested a hearing de novo before

an Administrative Law Judge ("ALJ") (Tr. 106-13). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 29-59.) The ALJ subsequently ruled Plaintiff not disabled under the Act. (Tr. 8-28.) The Appeals Council denied her request for review (Tr. 1-4; see also Tr. 7), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] last met the insured status requirements of the [] Act on December 31, 2012.

2. [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of December 31, 2008 through her date last insured . . . .

3. Through the date last insured [Plaintiff] had the following severe impairments: right ankle pain status post healed fracture with resultant peroneal tendonitis, degenerative disc disease of the lumbar spine at L5-S1, status post left knee ACL reconstruction, bipolar disorder, depressive disorder, anxiety disorder, posttraumatic stress disorder (PTSD) and personality disorder.

. . . .

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . . .

5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except that [she] should: only occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; only occasionally balance, stoop, kneel and crouch; avoid concentrated [exposure] to operation of moving machinery

2

and unprotected heights; be limited to job[s] requiring
no more than 1-3 step tasks/simple, routine, repetitive
tasks and low stress jobs; be limited to only occasional
decision making; be limited to only occasional changes in
the work place; have no production work or pace work; be
limited to only occasional interaction with the public
and only occasional interaction with coworkers and
supervisors.

. . . .

6. Through the date last insured, [Plaintiff] was
unable to perform any past relevant work.

. . . .

10. Through the dated [sic] last insured, considering
[Plaintiff's] age, education, work experience, and
residual functional capacity, there were jobs that
existed in significant numbers in the national economy
that [Plaintiff] could have performed.

. . . .

11. [Plaintiff] was not under a disability, as defined
in the [] Act, at any time from . . . the alleged onset
date, through . . . the date last insured.

(Tr. 13-23 (bold font and internal parenthetical citations
omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Plaintiff has not established entitlement to relief under the
extremely limited review standard.

3

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead,
the Court "must uphold the factual findings of the ALJ if they are
supported by substantial evidence and were reached through
application of the correct legal standard." Hines, 453 F.3d at 561
(internal brackets and quotation marks omitted).  "Substantial
evidence means 'such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion.'" Hunter v. Sullivan,
993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402
U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla
of evidence but may be somewhat less than a preponderance." Mastro
v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and
quotation marks omitted).  "If there is evidence to justify a
refusal to direct a verdict were the case before a jury, then there
is substantial evidence." Hunter, 993 F.2d at 34 (internal
quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not
undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute its judgment for that of the [ALJ, as
adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal
brackets and quotation marks omitted).  "Where conflicting evidence
allows reasonable minds to differ as to whether a claimant is
disabled, the responsibility for that decision falls on the

4

[Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." <u>Id.</u> "These regulations establish a

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

5

'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[2]  "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

the ALJ must assess the claimant's residual functional capacity ("RFC")." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant at step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B.  Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these two grounds:

1) "the ALJ failed to consider all of Plaintiff's severe impairments in her step three evaluation" (Docket Entry 10 at 8); and

2) "the ALJ's step five finding is inconsistent with the [VE]'s testimony, and therefore, is not supported by substantial evidence" (id.).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (See Docket Entry 12 at 6-19.)

### 1.  Step Three

"Under Step 3, the [Social Security Administration's SEP] regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in appendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" Radford v. Colvin, 734 F.3d 288, 293 (4th Cir. 2013) (quoting 20 C.F.R. § 404.1520(a)(4)(iii)) (internal bracketed numbers omitted).  "The listings set out at 20 CFR pt. 404, subpt. P, App. 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect.  Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990)

(internal footnote and parentheticals omitted). "In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." Bennett, 917 F.2d at 160 (citing Zebley, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)); see also Zebley, 493 U.S. at 530 ("An impairment that manifests only some of those criteria [in a listing], no matter how severely, does not qualify.").[5]

According to Plaintiff, in Cook v. Heckler, 783 F.2d 1168 (4th Cir. 1986), the Fourth Circuit mandated that:

> In evaluating whether a claimant meets one of [sic] more of the listed impairments at step three, an ALJ is required to identify the relevant listings for each impairment that is determined to be severe [at step two]. What is more, the ALJ is required to compare the claimant's actual symptoms to the requirements of any relevant listed impairments in more than a summary way.

(Docket Entry 10 at 10 (internal citation and quotation marks omitted) (citing Cook, 783 F.2d at 1173) (emphasis added).)[6]

---

[5] "When a person claims a disability that is not contained in the listings, or a combination of disabilities, the [Social Security Administration's SEP regulation] requires that the claimant demonstrate his [or her] disability, or that the combination of his [or her] disabilities, 'medically equal' a listed impairment." Bennett, 917 F.2d at 160 (citing 20 C.F.R. § 404.1526(a)). Plaintiff has not raised any argument regarding the "medically equal" aspect of step three in connection with this assignment of error. (See Docket Entry 10 at 9-12; Docket Entry 13 at 2-3.)

[6] The second sentence from Plaintiff's quotation above purports to quote at length from Cook (see Docket Entry 10 at 10), but the language in question (apart from the words "summary way") actually does not appear in Cook and instead appears in two district court opinions (that, in turn, quote only the term "summary way" from Cook), compare Cook, 783 F.2d at 1173, with Mathis v. Astrue, 723 F. Supp. 2d 848, 850 (E.D.N.C. 2010), and Fraley v. Astrue, No. 5:07CV141, 2009 WL 577261, at *3 (N.D.W. Va. Mar. 5, 2009) (unpublished).

In fact, neither the cited, nor any other, portion of Cook imposes any such mandate; to the contrary, in that case, the Fourth Circuit simply ruled that:

> [When] there is ample evidence in the record to support a determination that [a claimant's impairment] met or equalled [sic] one of the [] impairments listed in Appendix 1 . . . [and the claimant's] symptoms appear to correspond to some or all of the requirements of [such listings,] . . . [t]he ALJ should [] identif[y] the relevant listed impairments. He [or she] should then [] compare[] each of the listed criteria to the evidence of [the claimant's] symptoms.

Cook, 783 F.2d at 1172-73 (emphasis added); see also Russell v. Chater, No. 94-2371, 60 F.3d 824 (table), 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (unpublished) ("Cook, however, does not establish an inflexible rule requiring an exhaustive point-by-point discussion [of listings] in all cases."); Pumphrey v. Commissioner of Soc. Sec., No. 3:14CV71, 2015 WL 3868354, at *3 (N.D.W. Va. June 23, 2015) (unpublished) ("[W]hen the record in a given case does not contain ample evidence demonstrating that a certain listing has been met, the ALJ is under no obligation to provide an analysis of that listed impairment in her decision."); Reynolds v. Astrue, No. 3:11CV49, 2012 WL 748668, at *4 (W.D.N.C. Mar. 8, 2012) (unpublished) ("[O]nly where there is ample evidence in the record to support a determination that a claimant's impairment meets or equals one of the listed impairments must the ALJ identify the relevant listed impairments and compare them to evidence of a plaintiff's symptoms."); Kelly v. Astrue, No. 5:08CV289FL, 2009 WL

10

1346241, at *5 (E.D.N.C. May 12, 2009) (unpublished) ("[T]he ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is ample evidence in the record to support a determination that an impairment meets or medically equals a listing." (internal quotation marks omitted)); Ketcher v. Apfel, 68 F. Supp. 2d 629, 645 (D. Md. 1999) ("[T]he duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments.").[7]

    In this case, Plaintiff's Brief complains that:

    the ALJ did not address why the objective medical
    findings in the record were not sufficient to show that
    Plaintiff's ankle or knee impairment met or equaled
    Listing 1.02 – Major dysfunction of a joint(s) (due to

---

[7] The Cook Court's confinement of the ALJ's duty to explicitly identify listings and compare their elements to the record to situations in which the claimant comes forward with "ample evidence" that an impairment meets a listing makes sense. "Step two of the [SEP] is a threshold question with a de minimis severity requirement," Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir. 2011) (citing Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)), but "[t]he criteria in the medical listings [at step three] are demanding and stringent," Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994) (internal quotation marks omitted); see also Zebley, 493 U.S. at 532 ("[The Social Security Administration] has set the medical criteria defining the listed impairments at a higher level of severity than the statutory [disability] standard."). Accordingly, the mere fact that an impairment qualifies as severe at step two does not suggest that it meets a listing at step three. No reason thus exists for courts to require ALJs to document the manner in which every impairment deemed severe at step two fails to meet a listing at step three; rather, common sense supports the Fourth Circuit's decision in Cook to insist that ALJs discuss a specific listing only when the claimant marshals "ample evidence" that an impairment actually meets the criteria for that listing. Nor does the more recent ruling in Radford counsel otherwise. Although the Fourth Circuit there remanded due to an ALJ's "insufficient legal analysis" at step three, it did so consistently with the standard set in Cook, as the record contained "probative evidence strongly suggesting that [the claimant] me[t] or equal[ed a particular listing]." Radford, 734 F.3d at 295.

any cause) or Listing 1.03 – Reconstructive surgery or surficial arthrodesis of a major weight-bearing joint; or her degenerative disc disease met or equaled Listing 1.04 – Disorders of the spine.

(Docket Entry 10 at 11 (internal citation omitted).) Plaintiff, however, has not even alleged (much less shown) that "there is ample evidence in the record to support a determination that [she] met or equalled [sic] one of [those] list[ings]," Cook, 783 F.2d at 1172 (emphasis added). (See Docket Entry 10 at 9-12; Docket Entry 13 at 2-3.) That failure defeats this assignment of error. See Mills v. Colvin, No. 5:13CV432FL, 2014 WL 4055818, at *4 (E.D.N.C. Aug. 14, 2014) (unpublished) (rejecting contention "that the ALJ erred by not discussing applicability of listings at step three of the [SEP], including Listing 1.02 for [the claimant's] knees . . . and Listing 1.04 for her degenerative disk disease," because she "d[id] not cite any evidence" that would satisfy "requirements" of those listings); Ramos-Rodriguez v. Commissioner, Soc. Sec. Admin., Civ. No. SAG-12-3766, 2013 WL 5883808, at *4 (D. Md. Oct. 30, 2012) (unpublished) ("[The plaintiff] has cited no medical evidence to suggest that she meets the criteria in Listing 1.04A . . . . In the absence of ample evidence suggesting [she met that criteria], the ALJ did not err in failing to identify Listing 1.04A."); see also Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do.").

12

Moreover, the ALJ made specific findings (uncontested by Plaintiff and well-supported by the record) documenting Plaintiff's failure to satisfy Listings 1.02, 1.03, and 1.04. In that regard, to meet the requirements of Listings 1.02 and 1.03 based on dysfunction or surgical reconstruction of a knee or ankle, a claimant must show an "inability to ambulate effectively, as defined in [Section] 1.00B2b," 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.02A, 1.03. That cross-referenced regulatory section, in turn, states that "inability to ambulate effectively means an extreme limitation of the ability to walk . . . defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Id., § 1.00B2b(1) (internal parenthetical citation omitted).

Here, the ALJ noted that Plaintiff "testified to the fact that she does not require any assistive devices to ambulate." (Tr. 21 (referencing Tr. 48).) Additionally, the ALJ expressly found that Plaintiff could "perform light work as defined in 20 CFR [§] 404.1567(b) except that[, due to her physical impairments, she] should[] only occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; only occasionally balance, stoop, kneel and crouch; [and] avoid concentrated [exposure] to operation of moving machinery and unprotected heights . . . ." (Tr. 15 (bold

13

font omitted).)[8]  "[B]y finding that [Plaintiff] was capable of performing light work [with no further restriction as to the amount of walking], the ALJ implicitly found that [Plaintiff] was capable of standing or walking for approximately six hours in an eight-hour work day." Harrison v. Colvin, No. 1:10CV18, 2013 WL 1661096, at *2 (M.D.N.C. Apr. 17, 2013) (unpublished) (Eagles, J.) (citing Social Security Ruling 83-10, Titles II and XVI:  Determining Capability to Do Other Work – The Medical-Vocational Guidelines of Appendix 2, 1983 WL 31251, at *6 (1983) ("Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."), and 20 C.F.R. § 404.1567(b) ("Light work involves . . . frequent lifting or carrying of objects weighing up to 10 pounds.

---

[8] Plaintiff has not challenged that RFC determination (see Docket Entry 10 at 8-15; Docket Entry 13 at 2-5) and substantial evidence supports it (see Tr. 19-20 (citing and/or quoting (A) "[p]rogress notes from [Plaintiff's] November 25, 2008 appointment [following her right knee reconstruction surgery the prior month] stat[ing] that she was 'doing absolutely splendidly,'" (B) reports of examination on June 3, 2010 (two weeks after casting of Plaintiff's right ankle for "undisplaced Weber B-type fracture"), during which orthopedist found "no more than minimal swelling . . . and no significant tenderness," "X-rays revealed progressive bony healing with normal anatomical alignment of the fracture," and Plaintiff received instructions to return only if she experienced problems or "on an as needed basis," (C) documentation from Plaintiff's treatment at orthopedic practice on September 16, 2011, at which she complained of right knee and right ankle pain, but exhibited "full range of motion of her right knee," displayed "no soft tissue swelling" of right ankle, and "walked without a significant limp," as well as on February 28, 2012, when "[s]tudies of her [right] knee showed [a] . . . normal right knee" and "studies of her [right] ankle showed her fibula fracture was healed and her peroneal tendon was intact and normal," and (D) records from Plaintiff's subsequent visits to a different orthopedic clinic, where she obtained steroid injection in her right ankle, "reported no improvement in her pain; however, it was noted that she had full range of motion of her ankle [and she] . . . was also noted as ambulating with a normal gait")).

14

. . . [A] job is in this category when it requires a good deal of walking or standing . . . .")).

In light of Plaintiff's testimony denying reliance on assistive devices to walk, as well as the ALJ's undisputed, well-documented finding that, despite physical impairments, Plaintiff could walk and carry ten-pound objects for most of the workday, "the record clearly lacked evidence, let alone 'ample evidence,' to support a finding that [she could not walk without] hand-held assistive devices which limited the functioning of both her upper extremities . . . . Therefore, the ALJ did not err in omitting a discussion of Listing[s 1.02 and] 1.03 from h[er] decision." <u>Bean v. Colvin</u>, No. 1:14CV32, 2015 WL 4413001, at *4 (M.D.N.C. July 17, 2015) (unpublished) (Peake, M.J.), <u>recommendation adopted</u>, slip op. (M.D.N.C. Aug. 17, 2015) (Osteen, C.J.).

For Listing 1.04, a claimant must offer proof not only of a "[d]isorder[] of the spine," such as "degenerative disc disease," but also "result[ant] compromise of a nerve root . . . or the spinal cord," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04, <u>and</u>:

> A. Evidence of <u>nerve root compression</u> characterized by neuroanatomic distribution of pain, limitation of motion of the spine, <u>motor loss (atrophy with associated muscle weakness or muscle weakness</u>) accompanied by sensory or reflex loss <u>and, if there is involvement of the lower back, positive straight-leg raising test</u> (sitting and supine);
> <u>or</u>
> B. <u>Spinal arachnoiditis</u>, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, <u>resulting in the need for</u>

> changes in position or posture more than once every 2
> hours;
> or
> C.  Lumbar spinal stenosis resulting in
> pseudoclaudication, established by findings on
> appropriate medically acceptable imaging, manifested by
> chronic nonradicular pain and weakness, and resulting in
> inability to ambulate effectively, as defined in 1.00B2b.

Id. (emphasis added).

As an initial matter, a review of the pertinent portions of Plaintiff's filings (see Docket Entry 10 at 2-11; Docket Entry 13 at 2-3) reveals that, "[a]lthough [she] has demonstrated sufficiently the presence of degenerative disc disease, a qualifying disorder of the spine, [s]he has failed to submit evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis," Ebison v. Colvin, No. 4:14CV135FL, 2015 WL 5725643, at *4 (E.D.N.C. Sept. 30, 2015) (unpublished) (internal citation omitted).[9]  Thus, "the ALJ did not err when she omitted any discussion of [those] listed impairments [of the spine], because Plaintiff had not demonstrated evidence of necessary criteria within those listings." Long v. Colvin, No. 1:13CV659, 2015 WL 1646985, at *2 (M.D.N.C. Apr. 14, 2015) (unpublished) (Osteen, C.J.); see also Ours v. Astrue, No. 1:07CV112, 2008 WL 4467161, at *14 (N.D.W. Va. Sept. 30, 2008) (unpublished) ("[The

---

[9]  As Plaintiff's Brief observes, the ALJ found that the record reflected degenerative disc disease at Plaintiff's L5-S1 joint.  (See Docket Entry 10 at 11 (citing Tr. 13).)  "L5-S1 represents a numbered lower back segment that relates to the fifth vertebra of the lumbar spine, and first vertebra of the sacral region of the spine." Carter v. Colvin, No. 12CV854A(F), 2015 WL 1647021, at *3 n.5 (W.D.N.Y. Apr. 14, 2015) (unpublished) (emphasis added).

p]laintiff had never been diagnosed or treated for spinal arachnoiditis, as addressed in Subsection B of Listing 1.04, or lumbar spinal stenosis, as addressed in Subsection C of Listing 1.04. Analysis of [the p]laintiff's symptoms to [sic] those subsections was unnecessary.").

Further, for reasons discussed in relation to Listings 1.02 and 1.03, the ALJ's citation to Plaintiff's testimony that she does not use walking aids, along with the ALJ's uncontested, well-supported finding that Plaintiff retained the capacity for light work (without added restrictions on the amount of walking and/or carrying she could do), obviated the need for explanation of the ALJ's implied determination that Plaintiff could <u>not</u> meet Listing 1.04C's demand for proof of an inability to walk without assistive devices that occupy both arms, 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04C. Similarly, the ALJ's conclusion that Plaintiff could manage the walking/standing demands of light work (and, by implication, the sitting demands of sedentary work)[10] without positional/postural changes beyond standard, two-hour work-breaks (<u>see</u> Tr. 15) (which Plaintiff has <u>not</u> challenged (<u>see</u> Docket Entry 10 at 8-15; Docket Entry 13 at 2-5)) constitutes an unrefuted (if implicit) finding that Plaintiff could <u>not</u> satisfy Listing 1.04B's requirement of a "need for changes in position or posture more than

---

[10]  "If someone can do light work, [the Social Security Administration] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

17

once every 2 hours," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04B. See generally Jordan v. Commissioner, Soc. Sec. Admin., Civ. No. SAG-10-3334, 2012 WL 6764528, at *2 (D. Md. Dec. 28, 2012) (unpublished) ("[The plaintiff argues] that the ALJ failed to evaluate Listing 12.05 . . . . [T]he ALJ's opinion evidences his rejection of the validity of the IQ tests, which are a necessary component to meet Listing 12.05. It is clear that the ALJ's opinion therefore contains the implicit conclusion that [the plaintiff] does not meet Listing 12.05 . . . ." (internal citation omitted)); Jones v. Astrue, No. 1:09CV45, 2012 WL 1267875, at *4 (M.D.N.C. Apr. 16, 2012) (unpublished) ("'[T]he duty of explanation will be satisfied when the ALJ presents "a reviewing court with findings and determinations sufficiently articulated to permit meaningful judicial review"' . . . . The [c]ourt thus should evaluate whether factual findings in the ALJ's decision provide a sufficient basis to sustain the ALJ's implicit determination that [the p]laintiff did not meet or equal [the] Listing [at issue]." (quoting Wyatt v. Bowen, No. 89-2943, 887 F.2d 1082 (table), 1989 WL 117940, at *3-4 (4th Cir. Sept. 11, 1989) (unpublished), in turn quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983)) (internal brackets omitted)), recommendation adopted, slip op. (M.D.N.C. May 22, 2012) (Beaty, C.J.).

Finally, the ALJ found that, when Plaintiff visited an orthopedist complaining of back pain, "[u]pon examination, . . .

18

[s]he had a negative straight leg raising [test result and her] strength was 5/5 in her bilateral lower extremities." (Tr. 19.) That finding "contradicts a finding of meeting or equaling Listing 1.04A . . . ." Jones v. Colvin, No. 13C1174, 2015 WL 6407533, at *5 (N.D. Ill. Oct. 22, 2015) (unpublished); see also Stanley v. Astrue, No. 1:11CV248, 2012 WL 1158630, at *7 (N.D. Ind. Apr. 6, 2012) (unpublished) ("With respect to Listing 1.04A, the ALJ pointed out that there was no evidence that [the plaintiff] had experienced loss of strength, sensation, or reflexes, or a positive straight leg raising test - required criteria for the Listing. In particular, the ALJ observed elsewhere in his decision that upon examination [the plaintiff's] motor function was generally found to be within normal limits and [the plaintiff] fails to cite to any evidence that undercuts the ALJ's findings concerning lack of motor loss. This is fatal to [the plaintiff's] argument."); Waddell v. Astrue, Civ. Action No. 6:11-90-JFA-KFM, 2011 WL 7111129, at *7 (D.S.C. Dec. 28, 2011) (unpublished) ("The ALJ also noted that [a doctor] examined the plaintiff [during the relevant period] and found that . . . [she possessed] full (5/5) strength . . . and that extension of her legs led to back pain but no leg pain, which also did not support a finding that the plaintiff met Listing 1.04A." (internal citation omitted)), recommendation adopted, 2012 WL 258137 (D.S.C. Jan. 27, 2012) (unpublished).

Case 1:15-cv-00166-WO-LPA   Document 14   Filed 03/04/16   Page 19 of 25

In sum, the foregoing analysis establishes that Plaintiff's instant assignment of error lacks merit because:

(a) Plaintiff failed to identify ample evidence that her right knee, right ankle, and/or lower back impairments met Listings 1.02, 1.03, and/or 1.04, such that the ALJ did not have to provide a detailed exposition on Listings 1.02, 1.03, and 1.04; and

(b) the ALJ's decision includes unimpeached (and unimpeachable) factual findings that demonstrate why Plaintiff's right knee, right ankle, and lower back impairments do not satisfy Listings 1.02, 1.03, and 1.04.[11]

_____

[11] Plaintiff's invocation (see Docket Entry 10 at 11-12; Docket Entry 13 at 2) of Hair v. Astrue, No. 5:10CV309D, 2011 WL 2681537, at *6-7 (E.D.N.C. June 16, 2011) (unpublished), recommendation adopted, 2011 WL 2693298 (E.D.N.C. July 11, 2011) (unpublished), does not alter the outcome. The Hair Court ordered a remand (in relevant part) because the ALJ "failed to adequately address [the] plaintiff's shoulder impairment at step three of the [SEP]." Id. at *6. In doing so, the Hair Court focused on the fact that the ALJ's decision made "no specific reference to the shoulder impairment in th[e step three] finding. Nor [did the ALJ's decision] expressly address the shoulder impairment in [the] explanation of the [step three] finding." Id. The Hair Court also declined to consider whether findings made by the ALJ in formulating the plaintiff's RFC supported the ALJ's implicit conclusion that the plaintiff's shoulder impairment did not meet a listing, because "the analysis at step three is [not] closely related to the RFC analysis" and because a "court cannot endorse the principle that one or more steps in the [SEP] may simply be skipped if a purportedly similar evaluation is performed later." Id. at *7. To the extent Hair would require a court to remand for further administrative analysis of a listing, regardless of a plaintiff's failure to present ample evidence of an impairment meeting that listing's criteria, Hair conflicts with the Fourth Circuit's ruling in Cook (discussed above), which (as controlling authority) the Court must follow. To the extent Hair would preclude a court, when assessing an ALJ's finding that a plaintiff failed to meet a listing, from looking to portions of the ALJ's decision not addressed exclusively to step three, the Court should elect to follow the voluminous, more persuasive authority to the contrary, see, e.g., Fischer-Ross v. Barnhart, 431 F.3d 729, 734 & n.5 (10th Cir. 2005) (refusing to "require a remand for a more thorough discussion of the listings when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review" and observing that "at least two other circuits have declined to review an ALJ's conclusory determination at step three in an isolated manner separate from the rest of the ALJ's decision . . . [and instead] have upheld such determinations on the basis of evidence and findings set out in connection with other steps" (citing Rice v. Barnhart, 384

(continued...)

## 2. Step Five

Plaintiff's second (and final) assignment of error asserts that "the ALJ's step five finding is inconsistent with the [VE]'s testimony, and therefore, is not supported by substantial evidence." (Docket Entry 10 at 12 (bold font omitted).) More precisely, Plaintiff objects that:

> [T]he ALJ did not pose a hypothetical to the VE that corresponds with the ALJ's RFC finding, and therefore, the VE's testimony does not support a finding that there are a significant number of jobs with the specific limitations found by the ALJ in her decision. Specifically, the ALJ asked the VE to consider the occupational effect of <u>frequent interaction with a supervisor</u> (Tr. 57), but then in her RFC assessment, increased Plaintiff's functional limitation to <u>occasional interaction with supervisors</u> (Tr. 15).

(Docket Entry 10 at 15 (emphasis added).) This assignment of error does not warrant reversal or remand.

The compatible jobs identified by the VE in response to the cited hypothetical included "the unskilled, sedentary level [job of] direct mail clerk . . . [corresponding to Dictionary of

[11] (...continued)
F.3d 363, 370 & n.5 (7th Cir. 2004), and <u>Jones v. Barnhart</u>, 364 F.3d 501, 503–05 (3d Cir. 2004))); <u>Williamson v. Colvin</u>, No. 1:12CV1299, 2014 WL 4084685, at *2 (M.D.N.C. Aug. 14, 2014) (unpublished) (Eagles, J.) (rejecting challenge to an ALJ's step three finding that the plaintiff did not meet a listing and noting that, in considering such matters, "a court may look to other steps for substantial evidence" (citing <u>Smith v. Astrue</u>, 457 F. App'x 326, 328 (4th Cir. 2011), <u>McCartney v. Apfel</u>, 28 F. App'x 277, 279–80 (4th Cir. 2002), and <u>Kiernan v. Astrue</u>, No. 3:12CV459–HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished))). Indeed, even the judicial officials involved in <u>Hair</u> have since recognized that "[t]he fact that the reasons supporting the ALJ's listing determination are not all set out at step three of the [SEP] does not constitute legal error because the decision should be read as a whole." <u>Bruss v. Colvin</u>, No. 5:14CV63D, 2015 WL 64929, at *7 n.7 (E.D.N.C. Jan. 5, 2015) (unpublished); <u>accord</u> <u>Williams v. Colvin</u>, No. 4:13CV259, 2015 WL 631250, at *7 n.5 (E.D.N.C. Feb. 12, 2015) (unpublished).

Occupational Titles ("DOT") code] 209.587-010, [with] 18,000 [such jobs available] nationally, [and] 200 [such jobs available] in North Carolina." (Tr. 57.) The VE also gave "[a] second example [of] document preparer, [corresponding to DOT code] 249.587-018, [with] 18,000 [such jobs available] nationally, [and] 360 [such jobs available] in North Carolina." (Id.)[12] The VE further described her identification of those jobs as "consistent with the DOT." (Id.) The ALJ's decision credited the VE's foregoing testimony and expressly "determined that [it was] consistent with the information contained in the [DOT]." (Tr. 23.)

The DOT codes for the two foregoing jobs contain a fifth digit of "8," reflecting the lowest possible level of human interaction that exists in the labor force, including (as concerns supervisors) only "[a]ttending to the work assignment instructions or orders of [a] supervisor . . . [with n]o immediate response required unless

---

[12] The job numbers given by the VE for the two, above-referenced jobs (i.e., combined totals of 560 statewide and 36,000 nationally) qualify as significant for purposes of step five. See, e.g., Weiler v. Apfel, 179 F.3d 1107, 1110-11 (8th Cir. 1999) ("The [VE's] testi[mony] that there are 32,000 surveillance monitor positions nationwide . . . is substantial evidence supporting the ALJ's conclusion that there are a significant number of jobs in the economy which [the plaintiff] can perform."); Lee v. Sullivan, 988 F.2d 789, 794 (7th Cir. 1993) (documenting cases establishing that state or local job totals as low as 174 supported "significant number" finding at step five); Craige v. Bowen, 835 F.3d 56, 58 (3d Cir. 1987) ("[The VE] indicated there were about 200 jobs in the light exertional category within [the plaintiff's] capabilities in his region. This is a clear indication that there exists in the national economy other substantial gainful work which [the plaintiff] can perform."); Hicks v. Califano, 600 F.2d 1048, 1051 (4th Cir. 1979) ("Claimant contends that the light and sedentary jobs described by the [VE] . . . do not exist in significant numbers within the region. We do not think that the approximately 110 jobs testified to by the [VE] constitute an insignificant number."); Patterson v. Astrue, Civ. Action No. 8:07-1602-HFF-BHH, 2008 WL 294461, at *5 (D.S.C. July 31, 2008) (unpublished) ("[T]he VE testified that 28,000 surveillance jobs appeared in the national economy. This testimony was substantial evidence for the ALJ to conclude that the surveillance job appeared in significant numbers." (internal citation omitted)).

clarification of instructions or orders is needed." See DOT, App'x
B, 1991 WL 688701. Even more significantly, the DOT entries for
those two jobs both describe the amount of "[t]aking instructions"
required as "[n]ot [s]ignificant." DOT, 209-587-010, 1991 WL
671797; DOT, 249-587-018, 1991 WL 672349. In other words:

> As defined in the DOT, the level of interaction
> designated for the[se] job[s] . . . is "not significant"
> and is rated at a Level 8. . . . This designated level
> of interaction is compatible with an RFC limiting a
> claimant to only <u>occasional contact with</u> coworkers,
> <u>supervisors</u>, and the public. Consequently, <u>it cannot be
> said that working in th[ese] job[s] where interaction is
> rated at a Level 8 and is considered "not significant" by
> the DOT would require Plaintiff to exceed the RFC
> limitation that he have only occasional contact with
> supervisors</u> . . . .

Cobb v. Colvin, No. 2:13CV115TCM, 2014 WL 6845850, at *19 (E.D. Mo.
Dec. 3, 2014) (unpublished) (internal citations omitted) (emphasis
added); see also Sanchez v. Colvin, No. 1:13CV2479GBC, 2014 WL
5147793, at *16 (M.D. Pa. Oct. 14, 2014) (unpublished) ("[E]ach of
the positions the ALJ found Plaintiff could perform has a 'People'
value of '8-Taking Instructions-Helping-Not Significant.' Many
[c]ourts have held that a position with this 'people' code is one
that can be performed despite limitations in interacting with
supervisors[.]" (internal citations omitted)); Arsenault v. Astrue,
Civ. No. 08-269-P-H, 2009 WL 982225, at *3 (D. Me. Apr. 12, 2009)
(unpublished) ("[The DOT] descriptions [for two jobs identified by
the VE] note under the heading 'People' that 'Taking Instructions
– Helping' . . . is 'Not Significant.' Other courts have found

this entry to indicate that interaction with . . . supervisors is not significant or not more than occasional.").

Under these circumstances, although the ALJ's hypothetical question to the VE lacked the proper restriction of only occasional interaction with supervisors, this error "did not prevent the [VE] from identifying [available] occupations that fit within the actual parameters of Plaintiff's RFC. . . . Accordingly, the ALJ's failure to list [that restriction] . . . in her hypothetical did not change the outcome of the decision and amounts to harmless error." Blackstone v. Astrue, Civ. No. SKG-12-2776, 2014 WL 253538, at *3 (D. Md. Jan. 17, 2014) (unpublished); accord Bradley v. Colvin, No. 2:14CV23774, 2015 WL 5725832, at *3-5 (S.D.W. Va. Sept. 30, 2015) (unpublished); Martinez v. Colvin, No. 12CV3239CMA, 2014 WL 788788, at *5 n.6 (D. Colo. Feb. 26, 2014) (unpublished); Ward v. Astrue, No. 2:09CV53, 2010 WL 1752554, at *4 (W.D. Va. May 3, 2010) (unpublished); Arsenault, 2009 WL 982225, at *2-3.[13]

---

[13] "The federal 'harmless-error' statute, now codified at 28 U.S.C. § 2111, tells courts to review cases for errors of law 'without regard to errors' that do not affect the parties' 'substantial rights.'" Shinseki v. Sanders, 556 U.S. 398, 407 (2009). Moreover, the United States Supreme Court "has said that the party that seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted." Id. at 409 (internal quotation marks omitted). "[C]ourts have correlated review of ordinary administrative proceedings to appellate review of civil cases in this respect. Consequently, the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Id. (citing with approval, inter alia, Nelson v. Apfel, 131 F.3d 1228, 1236 (7th Cir. 1997), a Social Security disability case). Consistent with Sanders, the Fourth Circuit repeatedly has recognized the applicability of the harmless error doctrine in the Social Security disability context. See Mascio v. Colvin, 780 F.3d 632, 636-37, 639 (4th Cir. 2015); Garner v. Astrue, 436 F. App'x 224, 226 n.* (4th Cir. 2011); Morgan v. Barnhart, 142 F. App'x 716, 723 (4th Cir. 2005); Camp v. Massanari, 22 F. App'x 311, 311 (4th Cir. 2001). In this instance, regardless of which side bears the burden of persuasion as to the issue of prejudice, the record (as
(continued...)

## III. CONCLUSION

Plaintiff has established no grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 9) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be granted, and that judgment be entered for Defendant.

                    /s/ L. Patrick Auld
                 **L. Patrick Auld**
          **United States Magistrate Judge**
March 4, 2016

---

[13] (...continued)
discussed above) establishes as a matter of law that Plaintiff suffered no prejudice due to the ALJ's errant description of Plaintiff's limitation in interacting with supervisors within the hypothetical question to the VE.